728 N.E.2d 1237 (2000)
313 Ill. App.3d 352
245 Ill.Dec. 880
In re M.M.J., Alleged to be a Neglected Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellee
v.
James Johnson).
No. 4-99-0940.
Appellate Court of Illinois, Fourth District.
May 3, 2000.
*1238 Paul G. Lawrence (Court-appointed), Lawrence, Moore & Ogar Bloomington, for James Johnson.
Charles G. Reynard, State's Attorney, Bloomington, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, Kathy Shepard, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice McCULLOUGH delivered the opinion of the court:
Respondent father, James Johnson, appeals from the orders of the circuit court of McLean County finding him an unfit parent and terminating his parental rights in M.M.J., born January 23, 1998. The parental rights of respondent mother have previously been terminated, and she is not a party to this appeal. The issues are whether the trial court's findings of parental unfitness and that termination of respondent father's parental rights was in M.M.J.'s best interests were against the manifest weight of the evidence. We affirm.
On January 26, 1998, the State filed a petition for adjudication of wardship alleging that the then newly born infant was a neglected minor because the child would be residing in an environment injurious to her welfare due to respondent mother's unresolved issues of substance abuse and respondent mother having previously been found unfit as to another child, M.M. On *1239 September 17, 1998, the parents stipulated to the State's evidence, and M.M.J. was adjudicated a neglected minor. Following a dispositional hearing, the trial court entered a dispositional order on October 27, 1998, making M.M.J. a ward of the court, continuing the removal of custody from the parents, and placing her in the guardianship of the Department of Children and Family Services (DCFS).
On August 10, 1999, the State filed a petition to terminate respondent father's parental rights, alleging (1) failure to make reasonable efforts to correct the conditions that were the basis for the child's removal from him; (2) failure to make reasonable progress toward the return of the child within 12 months after the adjudication of neglect (although the statute now states 9 months); and (3) the child being in the temporary custody and guardianship of DCFS, respondent father having little or no contact with her, and respondent father's repeated incarcerations as a result of criminal convictions preventing him from discharging his parental responsibilities. 750 ILCS 50/1(D)(m), (D)(s) (West 1998). At the unfitness hearing, the State dismissed without prejudice the allegations of unfitness based on failure to make reasonable efforts and reasonable progress and proceeded on the remaining count.
The trial court took judicial notice of the presentence investigation report filed in People v. Johnson, McLean County case No. 99-CF-609, in which respondent father had been sentenced the prior week to three years in the Department of Corrections (DOC) for his conviction on two counts of domestic battery (subsequent offense felony). The presentence investigation report is not part of the record on appeal; however, the trial court did read relevant portions of it into the record, and respondent father testified as to his incarcerations.
According to the trial judge's recitations, the presentence investigation report indicated that respondent was born February 24, 1978; on March 26, 1997, he was sentenced to 12 months' probation with 25 days in jail for unlawful use of a weapon; on March 16, 1998, shortly after the child's birth, respondent father was sentenced to 30 months' probation, including as a condition 90 days in jail with credit for 10 days previously served; on May 22, 1998, he was unsuccessfully discharged from probation in relation to a Woodford County case dealing with unlawful possession of a controlled substance occurring on August 14, 1997 (also after the child's birth); in the Woodford County case, respondent father was sentenced to three years' imprisonment; he was released from prison on April 27, 1999, but on July 15, 1999, he was returned as a mandatory release violator; and when he was sentenced on October 26, 1999, in the most recent criminal proceeding, he received 140 days' credit for time previously served from June 9, 1999.
Respondent father testified he was in the hospital with respondent mother at the time of M.M.J.'s birth. Four days later, he came to court, and the child was given to DCFS. As a result of that hearing, he understood that to get the child back he had to get a place to stay and a job. On April 1, 1998, he reported to the McLean County jail to serve 36 days. He was released on May 6, 1998. He thought he had a visit during that period of incarceration. On May 13, 1998, he reported to Woodford County. He had a supervised visit during the week he was not in jail. On May 13, 1998, he was sentenced to three years in prison. While in the Woodford County jail, he got to see his daughter for 15 minutes. He was in DOC until April 23, 1999. While in Stateville minimum security, he had two visits with the child. On April 23, 1999, he was released. Arrangements were made for supervised visits. There were two visits at Catholic Social Services (CSS) offices, one or two at a park, and another visit at a mall. After being incarcerated in June 1999, he had no visits. The recent trouble he got into in June involved a girlfriend with whom he was living. His release date was December *1240 2000. He testified that the offense for which he was convicted was a false accusation. He admitted, however, that the domestic battery that occurred in 1997 was not a false accusation.
The trial court found the State had proved respondent father unfit as alleged by clear and convincing evidence. Findings of unfitness will be upheld on appeal unless they are against the manifest weight of the evidence. In re C.L.T., 302 Ill.App.3d 770, 772, 235 Ill.Dec. 863, 706 N.E.2d 123, 125 (1999).
Section 1(D)(s) of the Adoption Act provides as a ground for parental unfitness as follows:
"The child is in the temporary custody or guardianship of the Department of Children and Family Services, the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 1998).
The evidence established that M.M.J. was in the temporary custody and guardianship of DCFS, respondent father was incarcerated at the time the petition for termination of parental rights was filed, and respondent father had been repeatedly incarcerated as a result of criminal convictions.
Being a parent involves more than attending a few visits and sending an occasional gift to the child. The child needs a positive, caring role model present in her life. This ground for unfitness may be utilized regardless of respondent father's efforts, compliance with DCFS tasks and satisfactory attainment of goals, or the amount of interest he has shown in his daughter's welfare. Here, respondent father's repeated incarcerations have prevented him from providing the emotional and financial support and stability M.M.J. needs and deserves. Moreover, his past criminal history raises the inference that respondent father will continue to be unavailable and inadequate as a parent. See In re J.R.Y., 157 Ill.App.3d 396, 403, 109 Ill.Dec. 673, 510 N.E.2d 541, 546 (1987). The finding of parental unfitness in this case was not against the manifest weight of the evidence.
At the best interest hearing, James Leeds, a service worker for CSS, testified that M.M.J. was placed in the foster home of Eddie and Janet Foley after being in another foster home from birth to July 1998. In the Foleys' home, she was with her half sibling, M.M., who was free for adoption at that point. The Foleys were possible adoptive parents. M.M.J. was developmentally on track. M.M., who was four years old at the time of the hearing, interacted well with M.M.J., who was then almost two years old. In Leeds' opinion, termination of parental rights and possible adoption by the Foleys were in M.M.J.'s best interests. There were six children in the Foleys' family currently, and they had a large extended family involving older children. These older children provided assistance. The Foleys were very active in related family activities and group outings. Janet Foley and Dawn Weber, DCFS child welfare specialist, also testified.
The trial court found that termination of respondent father's parental rights was in M.M.J.'s best interests. The trial court's finding that termination of parental rights is in a child's best interests will not be reversed unless it is against the manifest weight of the evidence. In re I.D., 205 Ill.App.3d 543, 552, 151 Ill.Dec. 94, 563 N.E.2d 1200, 1206 (1990).
The evidence establishes M.M.J.'s need for permanency and stability, that an adoptive home is available that would satisfy those needs for M.M.J. and keep her with her half sibling, and that respondent father has not adequately discharged his parental responsibilities since M.M.J. was *1241 born and would not be able to do so in the near future. The trial court's finding that termination of respondent father's parental rights was in M.M.J.'s best interests was not against the manifest weight of the evidence.
We affirm the judgment of the circuit court of McLean County.
Affirmed.
COOK, P.J., and MYERSCOUGH, J., concur.