NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210642-U

NO. 4-21-0642

IN THE APPELLATE COURT

FILED
March 25, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* R.D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
|     Petitioner-Appellee, | ) | No. 19JA89 |
|     v. | ) | |
| Robert D., | ) | Honorable |
|     Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not err in (1) finding
respondent unfit and (2) terminating his parental rights.

¶ 2    In October 2019, the State filed a petition for adjudication of wardship with

respect to R.D., the minor child of respondent, Robert D. (Father). In January 2020, the trial

court made the minor a ward of the court and placed custody and guardianship with the

Department of Children and Family Services (DCFS). In May 2021, the State filed a petition to

terminate Father's parental rights. In October 2021, the court found Father unfit and determined

it was in the minor's best interests Father's parental rights be terminated.

¶ 3    Father appeals, arguing the trial court erred in (1) finding him to be unfit and

(2) determining it was in R.D.'s best interests Father's parental rights be terminated. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5                               A. Initial Proceedings

¶ 6          In October 2019, the State filed a petition for adjudication of wardship with respect to R.D., born in February 2018, the minor child of Father and Tamira W. The petition alleged, in relevant part, the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)) because his environment was injurious to his welfare as evidenced by Tamira W.'s failure to protect R.D. from repeated domestic violence in their home and her "unresolved issues of domestic violence and/or anger management."

¶ 7          Following a shelter-care hearing, the trial court entered a temporary custody order, finding probable cause to believe R.D. was neglected based on "numerous" domestic violence incidents involving Tamira W. and her boyfriend, Phillip M., as well as Tamira W.'s failure to protect or remove the minor from such an environment. The court also found it a matter of immediate and urgent necessity to remove R.D. from the home, noting, "[Tamira W.] and [Phillip M.] continue to have contact with each other and repeated domestic incidents despite a no contact order." The court granted temporary custody to DCFS.

¶ 8          In December 2019, Tamira W. admitted the second allegation of neglect relating to her "unresolved issues of domestic violence and/or anger management." The trial court adjudicated R.D. neglected. In its January 2020 dispositional order, the court found Father unfit to care for, protect, train, educate, supervise, or discipline the minor and placement with him would be contrary to the minor's health, safety, and best interests. The court noted Father "need[ed] to complete an [integrated assessment] to determine necessary services." The court

made the minor a ward of the court, placed custody and guardianship with DCFS, and stated visitation would be at the discretion of DCFS.

¶ 9                                    B. Termination Proceedings

¶ 10          In May 2021, the State filed a petition to terminate Father's parental rights. The State alleged unfitness based on depravity (750 ILCS 50/1(D)(i) (West 2018)) and failure to make reasonable efforts to correct the conditions which were the basis for removal of R.D. from Father within nine months after adjudication (750 ILCS 50/1(D)(m)(i) (West 2018)), specifically August 13, 2020, to May 13, 2021. The petition further alleged Father failed to make reasonable progress toward the return of the minor within nine months after adjudication (750 ILCS 50/1(D)(m)(ii) (West 2018)), specifically August 13, 2020, to May 13, 2021.

¶ 11                                    1. *Unfitness Hearing*

¶ 12          At the October 2021 unfitness hearing, the State presented certified copies of Father's eight convictions, three of which were felonies, including (1) burglary (McLean County case No. 06-CF-232); (2) criminal damage to property in excess of $300 (McLean County case No. 14-CF-1497); and (3) obstructing justice (McLean County case No. 17-CF-746).

¶ 13          Natasha Bever, a foster-care caseworker with the Center for Youth and Family Solutions, testified she had been R.D.'s caseworker since August 2020. Prior to her assignment to Father's case, Bever testified visits with R.D. had been suspended due to "an issue of violence towards the foster parent who had been helping with those visits." Bever testified R.D.'s foster mother obtained an emergency order of protection against Father after receiving "several phone calls and text messages from [Father] where he threatened to burn down her home and come to her place of employment and cause a scene." Bever first met with Father in October 2020 and discussed with him the objectives of his current service plan. Bever explained the service plan

required Father to cooperate, complete an integrated assessment, and engage in domestic-violence and substance-abuse services. However, throughout the relevant nine-month period, Father made unsatisfactory progress with respect to each of his service plan goals. Father "did not call in or complete any random [drug] screens," and Bever testified she had inconsistent communication with him. Bever stated Father had been incarcerated since November 2020 and had failed to successfully complete his service plan.

¶ 14 Prior to R.D. being taken into protective custody, Father testified he was responsible for the minor's care "[a]t least half the time," and he was involved in seeking medical treatment for R.D.'s Hirschsprung's disease. Father also testified he had been in jail or prison since November 2020. He received a four-year sentence for the offense of obstructing justice. He stated his visits with R.D. "go as good as they can be for being through video." Upon his incarceration, Father claimed he completed a "voluntary" drug and alcohol evaluation. However, he acknowledged he never participated in any domestic-violence or substance-abuse services pursuant to his service plan, despite his caseworkers "trying to get [him] to do drug classes and all that," because he was relying on Tamira W. to be R.D.'s custodian.

¶ 15 Following the arguments of counsel, the trial court found Father unfit based on the State's allegation of depravity, but not simply because of the three felony convictions. The court also found the State had proven the allegations of lack of reasonable efforts or progress, all by clear and convincing evidence. The court noted Father had been incarcerated "since the end of 2020 for a period of almost 11 months. And he was incarcerated in the county jail prior to that." Although Father "was not the primary participant in the domestic violence," the court determined Father engaged in "a pattern of behavior *** especially during the life of this case, that doesn't comply to or adhere to societal norms." Of particular concern to the court was Father's "wholly

- 4 -

inappropriate line of statements directed to [the foster parent]," which "led to her requesting an order of protection." Moreover, the court noted Father's inability to comply with the terms of his probation, stating:

> "[I]n each of those felonies, the one in 2006, [Father was] given an opportunity of probation. Yes, this was prior to [R.D.]'s birth. Got time in jail. Had a petition to revoke. Put back on probation. *** Had another petition to revoke and ended up in the Department of Corrections [(DOC)] *** more than two and a half years after the original offense date. The offense from 2014, yes, it's criminal damage to property. *** Given an opportunity at probation and stayed jail time. There were petitions to revoke. No, he didn't go to [DOC], but he was unsuccessfully discharged from probation. He couldn't complete probation. Couldn't complete a term with someone watching over him telling him what to do. He couldn't comply with the Court's order.
>
> The offense of obstruction of justice ***. Again, given another opportunity at probation. Revoked in March of 2020. Put in jail. Remained on probation. Then in August of 2020, admitted the second petition to revoke."

The court reasoned Father's pattern of being in and out of jail and failing to comply with orders of the court affected his ability to participate in recommended services and provide for his child, all based on choices he made.

¶ 16                                    2. *Best-Interests Hearing*

¶ 17 Thereafter, the trial court conducted the best-interests hearing. The best-interests report indicated R.D. had resided in his current placement since October 2019. R.D. appeared to be "happy, healthy, and thriving in his current placement." He was also "bonded with his foster mother and behaves as a child who feels secure, loved, valued, nurtured and safe." The report indicated Father "had inconsistent visitation during the life of the case." Father had been asked to participate in services relating to substance abuse and domestic violence. However, Father "failed to complete *** any recommended treatment" prior to his arrest.

¶ 18 In looking at R.D.'s best interests, the trial court first considered the minor's age and developmental needs, stating R.D. had "[b]een in care for over two years, which is about 53 percent of his life." Regarding R.D.'s background and familial ties, the court noted the minor's foster mother "maintained those bonds with all members of family that are interested in being involved," and "she maintains the ties with [R.D.]'s half siblings, with other parental figures that have been in [R.D.]'s life." With respect to the minor's sense of security and familiarity, the court noted R.D.'s foster mother was "meeting all of his requirements on a daily basis," and his current placement was "clearly where [R.D.] feels secure based upon a review of the Best Interest Report." The court also considered the foster mother's desire to adopt the minor and noted Father's failure to complete any of the services he was required to engage in. Ultimately, the court found it in R.D.'s best interests Father's parental rights be terminated.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, Father argues the trial court erred in (1) finding him to be unfit and (2) determining it was in R.D.'s best interests Father's parental rights be terminated.

¶ 22 A. Unfitness Finding

¶ 23    Father first argues the trial court's finding of unfitness was against the manifest weight of the evidence. We disagree.

¶ 24    In a proceeding to terminate a respondent's parental rights, the State must prove unfitness by clear and convincing evidence. *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177-78 (2006). " 'A determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make.' " *In re Richard H.*, 376 Ill. App. 3d 162, 165, 875 N.E.2d 1198, 1201 (2007) (quoting *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90, 819 N.E.2d 813, 819 (2004)). A reviewing court accords great deference to a trial court's finding of parental unfitness, and such a finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re N.T.*, 2015 IL App (1st) 142391, ¶ 27, 31 N.E.3d 254. " 'A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent.' " *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69 (quoting *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 517 (2005)).

¶ 25    Our supreme court has defined depravity as "an inherent deficiency of moral sense and rectitude." (Internal quotation marks omitted.) *Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952); see also *Donald A.G.*, 221 Ill. 2d at 240. A parent's depravity "may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality." (Internal quotation marks omitted.) *In re Shanna W.*, 343 Ill. App. 3d 1155, 1166, 799 N.E.2d 843, 850 (2003). As to an allegation of depravity, section 1(D)(i) of the Illinois Adoption Act provides, in part, as follows:

> "There is a rebuttable presumption that a parent is depraved
>
> if the parent has been criminally convicted of at least 3 felonies

under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2018).

A parent may overcome the rebuttable presumption of depravity by presenting evidence that, despite his criminal convictions, he is not depraved. *Shanna W.*, 343 Ill. App. 3d at 1166. "If respondent presents evidence contradicting the presumption, the presumption is removed and the issue is determined based on the evidence presented." *In re P.J.*, 2018 IL App (3d) 170539, ¶ 13, 101 N.E.3d 194; see also *In re J.A.*, 316 Ill. App. 3d 553, 562, 736 N.E.2d 678, 686 (2000) (stating once evidence rebutting the presumption is presented, the presumption ceases to operate and the issue is decided on the evidence as if no presumption had existed).

¶ 26        Here, the evidence indicated Father had eight criminal convictions, three of which were felony convictions, including burglary (McLean County case No. 06-CF-232), criminal damage to property in excess of $300 (McLean County case No. 14-CF-1497), and obstructing justice (McLean County case No. 17-CF-746). See 750 ILCS 50/1(D)(i) (West 2018). Given Father had been convicted of at least three felonies and one of those convictions took place within five years of the filing of the 2021 petition to terminate his parental rights, the State's evidence created a rebuttable presumption of his depravity. See *In re A.H.*, 359 Ill. App. 3d 173, 180, 833 N.E.2d 915, 921 (2005) ("Certified copies of the requisite convictions create a *prima facie* showing of depravity ***."). Although the trial court determined Father provided "some testimony" to rebut the presumption, it ultimately found the State proved Father unfit as alleged by clear and convincing evidence. See *Donald A.G.*, 221 Ill. 2d at 244. The court noted

Father engaged in "a pattern of behavior *** that doesn't comply to or adhere to societal norms," specifically noting Father's "wholly inappropriate line of statements directed to [the foster parent]," which "led to her requesting an order of protection." The court also recognized Father's apparent inability to comply with any term of probation and found Father demonstrated a history of criminality, which led to his incarceration throughout much of R.D.'s young life. Further, Father has not provided the financial, physical, or emotional support R.D. needs and deserves. Father's incarceration prevented him from not only completing his service plan goals but also discharging his parental responsibilities. Moreover, his past criminal history raises the inference he "will continue to be unavailable and inadequate as a parent." *In re M.M.J.*, 313 Ill. App. 3d 352, 355, 728 N.E.2d 1237, 1240 (2000).

¶ 27        Since the evidence does not clearly point to the opposite result, we cannot say the trial court's finding of unfitness on this ground was against the manifest weight of the evidence. See *M.I.*, 2016 IL 120232, ¶ 21. Because we can affirm the trial court's unfitness finding on this basis, we need not address the remaining grounds. See *In re H.D.*, 343 Ill. App. 3d 483, 493, 797 N.E.2d 1112, 1120 (2003) ("As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds.").

¶ 28                                B. Best-Interests Finding

¶ 29        Father next argues the trial court's finding termination of his parental rights was in R.D.'s best interests was against the manifest weight of the evidence. We disagree.

¶ 30        Once the trial court finds the parent unfit, "all considerations must yield to the best interest of the child." *In re I.B.*, 397 Ill. App. 3d 335, 340, 921 N.E.2d 797, 801 (2009). When considering whether termination is in a child's best interests, the trial court must consider

several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2018). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.3d 123, 141 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2018).

¶ 31    A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616.

¶ 32    Here, the best-interests report indicated R.D. had resided in his current placement since October 2019. R.D. appeared to be "happy, healthy, and thriving in his current placement."

He was also "bonded with his foster mother and behaves as a child who feels secure, loved, valued, nurtured and safe." The report further indicated Father "had inconsistent visitation during the life of the case." Father had been asked to participate in services relating to substance abuse and domestic violence. However, Father "failed to complete *** any recommended treatment" prior to his incarceration. Moreover, after reviewing the statutory factors, the trial court emphasized R.D.'s need for permanence, his sense of security, his sense of familiarity, and the continuity of relationships with parent figures and siblings. R.D. had "[b]een in care for over two years, which is about 53 percent of his life," and Father had yet to complete any services or comply with the requirements of his service plan as of October 2021. In looking at R.D.'s background and familial ties, the court noted the minor's foster mother "maintained those bonds with all members of family that are interested in being involved," and "she maintains the ties with [R.D.]'s half siblings, with other parental figures that have been in [R.D.]'s life." The court referenced how the evidence showed R.D. was secure in the foster home and shared a sense of familiarity with his foster mother. Finally, the court considered the foster mother's desire to adopt the minor and that she was already "meeting all of his requirements on a daily basis."

¶ 33 All told, the evidence in this record supports the trial court's decision that terminating Father's rights served R.D.'s best interests, meaning the decision is neither unreasonable nor arbitrary. See *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. R.D. is currently in a safe and loving home, and his foster mother is willing to provide him with the permanency he needs and deserves. Since the evidence does not lead us clearly to the opposite conclusion, we cannot say the trial court's best-interests determination goes against the manifest weight of the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 34 III. CONCLUSION

¶ 35        For the reasons stated, we affirm the trial court's judgment.

¶ 36        Affirmed.