634 N.E.2d 36 (1994)
261 Ill. App.3d 71
199 Ill.Dec. 436
In re M.M., Jr., and R.M., Minors (The Department of Children and Family Services ex rel. Sharon Kincaid, Petitioner-Appellee, v. R.H.M. and M.M., Sr., Respondents-Appellants).
No. 5-92-0656.
Appellate Court of Illinois, Fifth District.
May 10, 1994.
*37 Joel M. Drury, P.C., Belleville, for respondents-appellants.
Robert Haida, State's Atty., St. Clair County, Belleville, and Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, and Rebecca Sanders, Staff Atty., Office of the State's Attys. Appellate Prosecutor, Mt. Vernon, for petitioner-appellee.
Brian A. Babka, Chatham & Babka, Belleville, for guardian ad litem.
Justice CHAPMAN delivered the opinion of the court:
The respondents, R.H.M. (mother) and M.M., Sr. (father), appeal from an order which found them to be unfit parents, terminated their parental rights, and granted the State the power to consent to the adoption of their minor children, R.M. and M.M., Jr. We affirm.
On April 15, 1991, the trial court entered a default judgment against the respondents and found that both minor children were neglected. Nine months later, the Department of Children and Family Services (DCFS) filed a petition to terminate respondents' parental rights. A hearing was held on June 22, 1992, and the court found that the State had proven that the parents were unfit by clear and convincing evidence. After a dispositional hearing, the court terminated the respondents' parental rights and granted DCFS guardianship with the power to consent to adoption.
The respondents contend that because the children were removed from their home based upon a finding of neglect, the parents were entitled to a statutory 12-month period between the time the children were adjudicated neglected and the filing of the petition to terminate rights in order to make progress toward the return of the children. Respondents base their argument upon section 1501(D)(m) of the Adoption Act, which states that a finding of unfitness may be based upon:
"failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such a parent within 12 months after an adjudication of neglected minor, abused minor or dependent minor under the Juvenile Court Act or the Juvenile Court Act of 1987." Ill.Rev.Stat. 1989, ch. 40, par. 1501(D)(m).
Respondents argue that that statutory provision guarantees them at least 12 months between the time that the children were adjudicated neglected and the filing of the petition *38 to terminate parental rights. Respondents have misinterpreted the statute.
Section 1501(D) of the Adoption Act lists statutory grounds which will support a finding of unfitness, not a list of parents' rights. DCFS did not seek to terminate the respondents' parental rights based upon respondents' failure to make reasonable progress toward the return of the children within 12 months, nor did the court base its determination upon that statutory ground. Rather, respondents were alleged to be unfit based upon the following statutory grounds:
"(b) failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare;
(c) desertion of the child for more than 3 months next preceding the commencement of the Adoption proceeding;
* * * * * *
(n) evidence of intent to forego his or her parental rights, whether or not the child is a ward of the court, (1) as manifested by his or her failure for a period of 12 months (i) to visit the child, (ii) to communicate with the child or agency, although able to do so and not prevented from doing so by an agency or by court order, or (iii) to maintain contact with or plan for the future of the child, although physically able to do so * * *." Ill.Rev. Stat.1989, ch. 40, pars. 1501(D)(b), (c), (n).
The court found respondents unfit based upon their failure to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children. (See Ill. Rev.Stat.1989, ch. 40, par. 1501(D)(b).) Therefore, respondents' argument that they were denied 12 months in which to make reasonable progress toward the return of the children, based upon section 1501(D)(m) of the Adoption Act, is without merit. Also, the record shows that approximately 14 months passed between the finding of neglect and the termination hearing and finding.
Respondents further argue that DCFS failed to establish by clear and convincing evidence that respondents failed to show a reasonable degree of interest, concern, or responsibility in the care and future of the minors, as required to terminate parental rights under section 1501(D)(b) of the Adoption Act.
In order to uphold a trial court's termination of rights, there must be clear and convincing evidence of the parents' unfitness, but the trial court's findings will not be disturbed on appeal unless they are against the manifest weight of the evidence. (In re J.B. (1990), 198 Ill.App.3d 495, 144 Ill.Dec. 679, 555 N.E.2d 1198.) We believe that the trial court's finding of unfitness is supported by the weight of the evidence, and we affirm the trial court.
The record reflects that the respondents were both wards of the State at the times that M.M., Jr., and R.M. were born. The respondents met in a State facility. The couple ran from the facility, and R.H.M. became pregnant with their first child, M.M., Jr., who was born on February 14, 1990, and was placed in foster care six weeks later. Since that time until the date of trial, some 26 months later, his father had seen him only once, in November of 1991. The mother had seen him approximately four times and then only when she was in the custody and control of the State. She had sent him one gift and possibly a couple of cards or letters.
The respondents' second child, R.M., was born on March 11, 1991, and was immediately placed in foster care. At the time of the hearing, the father had never seen R.M. Her mother had not seen her since April 1991, when visitation with the child ended because the mother again ran away from her DCFS placement.
The testimony at trial indicated that the respondents made virtually no attempt to visit or contact the children. The trial court found their excuses for their lack of communication to be unreasonable and incredible. We agree.
The mother claimed that she was unable to have contact with the children because she was running from DCFS, of which she was a ward herself. She testified that if she had contacted DCFS to arrange visitation with her children, she would be caught and would then be denied access to her children. We agree with the trial court that this *39 is not a reasonable explanation for her failure to visit her children. The mother admitted that the facility where she was housed was nice and that the only time that she did see her children was when she was in the State's custody.
The father claimed that he had not seen the children because he was in prison, and then later he was too busy trying to provide for the couple's third child. He further testified that while in prison he did not contact DCFS to arrange visitation because he did not have access to a telephone. However, the record indicates that during that same period of time he telephoned the mother several times, and he also wrote several letters to her while she was in the custody of the State.
Additionally, neither parent completed any of the objectives of the DCFS service plans, though they understood that successful completion of the service plans was necessary for the return of the children to their custody.
The respondents argue that the court erred by not considering their special circumstances and affording them more time to remedy their personal problems before terminating their parental rights. We disagree.
The record shows that the trial court looked at the respondents' particular circumstances. This is reflected in the court's order:
"In reaching its decision, the Court is mindful of the youth of the parents. The parents' youth alone, however, is not an excuse for their near-total abdication of parental responsibilities. It perhaps explains some of the problems which originally caused the children to come into foster care, but it does not explain the parents' failure to make reasonable efforts to get the children out of foster care."
The trial court found that the State had proven by clear and convincing evidence that the respondents failed to maintain a reasonable degree of interest, concern, or responsibility as to the future of their children. We believe that the trial court's decision is fully supported by the weight of the evidence, and we affirm the trial court's finding of unfitness and termination of parental rights.
Affirmed.
GOLDENHERSH and MAAG, JJ., concur.