*In re* GWYNNE P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Detra W. *et al.*, Respondents-Appellants).

First District (2nd Division) Nos. 1—03—1427, 1—03—1601 cons.

Opinion filed February 24, 2004.

GARCIA, J., dissenting.

Thomas M. O'Connell, of Schaumburg, for appellant Edward D.

Donna L. Ryder, of Law Office of Donna Ryder, Ltd., of Chicago, for appellant Detra W.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Mary Rutkowski Burda, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Christopher Williams, of counsel), guardian *ad litem*.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Sometimes there is just too much history. Detra W. made substantial progress toward correcting her life as she sought to regain custody of her child, Gwynne P., but she could not overcome the prison terms that prevented her from discharging her parental responsibilities.

Following a hearing, the circuit court found respondents Edward D. and Detra W. were unfit parents to their daughter Gwynne P. At a subsequent hearing, the court determined it was in the best interests of the child to terminate respondents' parental rights and to appoint a guardian with the right to consent to adoption.

Respondents contend the trial court's findings regarding unfitness

and the child's best interests were against the manifest weight of the evidence and that the court erred when it prematurely changed the permanency goal to termination of parental rights five months after the adjudication of neglect. Edward D. also contends the trial court erred in admitting opinion testimony during the best interests portion of the hearing. We affirm.

FACTS

Gwynne P. was born on June 18, 1999, and tested positive for exposure to cocaine and heroin.

Detra W. and Edward D. are Gwynne P.'s biological parents. In March 1998, Detra W. escaped from custody by breaking her electronic monitoring device. On June 15, 1999, she was arrested for possession of a controlled substance three days before Gwynne P. was born. On August 11, 1999, Detra W. returned to prison and was placed in disciplinary segregation for one year. She was released from prison in March 2002.

Edward D. was incarcerated on September 3, 1999, and was released in December 2002.

On December 7, 1999, Gwynne P. was adjudicated a ward of the court and placed under the guardianship of the Department of Children and Family Services (DCFS) based on findings of abuse, neglect, and dependency. Five months later, the court changed the permanency goal to "substitute care pending court determination on termination of parental rights."

On January 30, 2001, the State petitioned for termination of parental rights and appointment of a guardian with the right to consent to adoption. The State later amended its petition to include additional grounds for termination of parental rights. As grounds for termination, the State alleged respondents were unfit parents because they failed to maintain a reasonable degree of concern, interest, or responsibility as to the child's welfare; they behaved in a depraved manner; they failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from them; they failed to make reasonable progress toward the return of the child within nine months after the adjudication of neglect; and they were repeatedly incarcerated as a result of criminal convictions, preventing them from discharging their parental responsibilities in violation of subsections 1(D)(b), (D)(i), (D)(m), and (D)(s) of the Adoption Act (Act) and section 2—29 of the Juvenile Court Act of 1987 (750 ILCS 50/1(D)(b), (D)(i), (D)(m), (D)(s) (West 2000); 705 ILCS 405/2—29 (West 2000)).

In March 2003, after conducting a fitness hearing the previous

December, the trial court found both respondents unfit on four statutory grounds: failure to maintain a reasonable degree of interest, failure to make reasonable efforts or reasonable progress, repeated incarceration, and depravity. See 750 ILCS 50/1(D)(b), (D)(m), (D)(s), (D)(i) (West 2002).

After conducting a separate hearing, the court found it was in Gwynne P.'s best interests to terminate respondents' parental rights and appointed the DCFS guardianship administrator with the right to consent to adoption.

## DECISION

### I. Standard of Review

The State must prove by clear and convincing evidence respondents are unfit parents. *In re D.F.*, 201 Ill. 2d 476, 494-95, 777 N.E.2d 930 (2002). A trial court's finding of unfitness is afforded great deference because it has the best opportunity to view and evaluate the parties and their testimony; the trial court's finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re D.F.*, 201 Ill. 2d at 498-99. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *In re D.F.*, 201 Ill. 2d at 498.

### II. Statutory grounds for unfitness

Respondents contend the trial court's findings of unfitness based on the four statutory grounds were against the manifest weight of the evidence. A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Act. *In re D.D.*, 196 Ill. 2d 405, 422, 752 N.E.2d 1112 (2001); 750 ILCS 50/1(D) (West 2002). We examine each statutory ground as it applies to each respondent.

#### A. Failure to maintain a reasonable degree of concern, interest, or responsibility

The Adoption Act provides that a court may find a parent unfit if the parent fails to maintain reasonable concern, interest, or responsibility for the welfare of a child. 750 ILCS 50/1(D)(b) (West 2002).

> "[I]n determining whether a parent showed reasonable concern, interest or responsibility as to a child's welfare, we have to examine the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred. Circumstances that warrant consideration when deciding whether a parent's failure to

personally visit his or her child establishes a lack of reasonable interest, concern or responsibility as to the child's welfare include the parent's difficulty in obtaining transportation to the child's residence [citations], the parent's poverty [citation], the actions and statements of others that hinder or discourage visitation [citation], and whether the parent's failure to visit the child was motivated by a need to cope with other aspects of his or her life or by true indifference to, and lack of concern for, the child [citation]." *In re Adoption of Syck*, 138 Ill. 2d 255, 278-79, 562 N.E.2d 174 (1990).

If visitation is impractical, the parent can show reasonable concern, interest, and responsibility in a child through letters, telephone calls, and gifts, depending on the frequency and tone of those communications. *In re Adoption of Syck*, 138 Ill. 2d at 279. Completion of service plan objectives also can be considered evidence of a parent's concern, interest, and responsibility. See *In re T.Y.*, 334 Ill. App. 3d 894, 905, 778 N.E.2d 1212 (2002) (court considered parent's failure to complete services when finding him unfit under section 1(D)(b)). Courts will consider the parent's efforts which show interest in the child's well-being, regardless of whether those efforts were successful. *In re Adoption of Syck*, 138 Ill. 2d at 279.

1. Detra W.

Jamie Steczo, a social worker from Lutheran Social Services (the agency), testified she was assigned to Gwynne P.'s case from July 1999 until June 1, 2000. During that time, Detra W. was being held in segregation at Dwight Correctional Center because she had broken her electronic monitoring device.

From December 7, 1999, to June 1, 2000, Detra W.'s service plan required the following services: parenting classes, substance abuse assessment and treatment, psychological evaluation, and counseling. Some of the services were not available to Detra W. while she was in segregation. According to Steczo, Detra W. placed her name on the waiting list for those services, but she did not complete any services before June 1, 2000.

Detra W. was required by the service plan to request visits with Gwynne P. by telephone or mail. The agency planned to schedule quarterly one-hour visits with Gwynne P. At the hearing, Steczo identified letters from Detra W. requesting visits with Gwynne P. Steczo scheduled a visit in November 1999 and another in March 2000.

Molly Ashbaugh was assigned Gwynne P.'s case beginning September 1, 2000, until March 2002. During that time, Detra W.

had three visits with Gwynne P. Ashbaugh testified two visits were not scheduled because Detra W. did not request them. Detra W. completed a series of parenting classes on September 14, 2000, after she was released from segregation. Detra W. began substance abuse classes in March 2001 and finished the program in September 2001. Detra W. was referred for a psychological evaluation while in segregation, and Detra W. told Ashbaugh she had completed the evaluation; however, Detra's case manager at the prison had no record of the evaluation.

On cross-examination, Ashbaugh testified she could not explain why Detra W. was allowed only two visits with her child despite Detra's several requests for Ashbaugh to schedule visits. Ashbaugh said Detra W. acted appropriately with Gwynne P. during her visits, tried to engage her, and acted affectionately. Detra W. frequently asked for pictures of Gwynne P. and was interested in the quality of care Gwynne P. was receiving. After Detra W. was released from prison in March 2002, she visited with Gwynne P. on a monthly basis.

At the hearing, Detra W. introduced evidence of 10 letters and 3 telephone calls requesting visits with Gwynne P. during Detra's incarceration. In total, Detra W. was entitled to 11 visits with Gwynne P. during that time. Leslie Berg, a supervisor at the agency, was unable to explain why Detra W. received only five visits with Gwynne P. despite her requests.

Detra W. also introduced several cards and letters she sent to Gwynne P. expressing her love and desire to see her. Detra W. also sent Gwynne P. a book and a tape of Detra reading the book. After Detra W.'s release from prison, she gave Gwynne P. a series of small gifts.

Detra W. also voluntarily completed a drug treatment program at Haymarket after her release from prison. Detra W. testified she did miss some of the sessions because she was visiting Gwynne P. or interviewing for jobs. Detra W. later completed the missed sessions and graduated from the program. She was subsequently hired by Haymarket as a "detox specialist."

The State and public guardian contend Detra W. failed to maintain reasonable concern, interest, and responsibility for Gwynne P. because "she escaped from prison while pregnant with Gwynne, used drugs, got arrested again, and was returned to prison and held in segregation." They also contend Detra W. did not show interest in Gwynne P. because of the sporadic visitation during her incarceration, although they acknowledge the evidence suggested some of the missed visits were due to the agency's failures. The State also contends Detra W.'s cards and letters were insufficient.

First, although the State and public guardian repeatedly contend otherwise, the record shows Detra W. escaped from electronic detention in March 1998, 18 months before Gwynne P.'s birth—she was not pregnant at the time of her escape. Second, we are not convinced any of these facts establish clear and convincing evidence Detra W. failed to show reasonable concern, interest, or responsibility toward Gwynne P. before termination of her parental rights.

While we agree Detra W.'s incarceration did not absolve her of the duty to show reasonable concern, interest, or responsibility (see *In re Sheltanya S.*, 309 Ill. App. 3d 941, 954, 723 N.E.2d 744 (1999)), we must consider her circumstances when measuring the reasonableness of her efforts. We look at her efforts to schedule visits, not the number of scheduled visits. We must also consider the limitations of Detra W.'s incarceration when considering whether her efforts with Gwynne P. showed reasonable interest or concern.

In *In re F.S.*, 322 Ill. App. 3d 486, 493-98, 749 N.E.2d 1033 (2001), the trial court terminated the respondent's parental rights for failure to maintain reasonable concern, interest, and responsibility for her child's welfare. The trial court found the respondent missed several scheduled visits with her child and failed to directly comply with objectives in her service plan by using programs other than those DCFS recommended. On appeal, this court reversed the trial court's finding of unfitness. The court said the missed visits were not clear and convincing evidence of a lack of concern for the child under the circumstances. *In re F.S.*, 322 Ill. App. 3d at 497. At the time of the missed visits, the respondent was participating in a restrictive drug treatment program which helped her overcome her addiction—the reason the child was removed from her custody. The respondent also completed parenting skills classes and was drug-free within six months of the adjudication of neglect. The court found the respondent substantially fulfilled her obligations under the service plan, and the trial court's finding was against the manifest weight of the evidence. *In re F.S.*, 322 Ill. App. 3d at 498.

In this case, Detra W. remained drug-free in the nine months between her release from prison and the unfitness hearing. Detra W. voluntarily enrolled in substance abuse treatment at Haymarket in addition to the classes she completed while incarcerated and regularly requested visits with Gwynne P. She also met the goals and objectives listed in her service plans. Based on the record, we find no clear and convincing evidence that Detra W. failed to show reasonable concern, interest, or responsibility toward Gwynne P. prior to the termination of her parental rights. The trial court's finding was against the manifest weight of the evidence.

2. Edward D.

Ashbaugh testified Edward D. had a total of five visits with Gwynne P. during his incarceration from 1999 until December 2002. Edward D. was responsible for requesting a visit before one would be scheduled. He acted appropriately during those visits, attempting to engage Gwynne P. and asking the social workers about her well-being. In 2001, two visits were cancelled due to his transfer to another correctional facility. Another visit was cancelled due to the agency's transportation problems.

Ashbaugh testified the service plans listed several services Edward D. was required to complete toward the goal of reunification. He never completed any of the listed services although the services were available to him through the correctional facilities where he stayed. Ashbaugh also testified Edward D. sent Gwynne P. cards and letters, but did not indicate the frequency of those letters or their content. The record does not contain any of the letters Edward D. sent.

It appears Edward D. made efforts to schedule visitation while he was incarcerated. For whatever reason, only five visits actually were completed. Edward D. did express interest in Gwynne P.'s well-being during those visits; however, without more information regarding his written communication with Gwynne P., there is little evidence showing he maintained reasonable concern, interest, or responsibility between the sporadic visits. Based on this evidence, we cannot conclude the trial court's finding of unfitness based on section 1(D)(b) of the Act (750 ILCS 50/1(D)(b) (West 2002)) was against the manifest weight of the evidence.

B. Failure to make reasonable progress

Section 1(D)(m) of the Adoption Act allows findings of unfitness based on a parent's failure to make reasonable progress toward the return of the child to the parent within any nine-month period following an adjudication of neglect, abuse, or dependency. 750 ILCS 50/1(D)(m) (West 2002). Under an objective standard, "reasonable progress" requires, at a minimum, the parent make measurable steps toward the goal of reunification through compliance with court directives, service plans or both. *In re J.A.*, 316 Ill. App. 3d 553, 564-65, 736 N.E.2d 678 (2000); *In re Sheltanya S.*, 309 Ill. App. 3d at 953-54, ("In order for a parent to make 'reasonable progress' toward the return of a child, he or she must make 'a minimum measurable or demonstrable movement toward that goal' "). When assessing whether a parent substantially fulfilled his obligations under the service plans, "the court 'must recogniz[e] that compliance with DCFS service plans is a means to a desired end, not the end in itself.' " *In re F.S.*, 322 Ill. App.

3d at 492, quoting *In re S.J.*, 233 Ill. App. 3d 88, 120 (1992) (respondent made reasonable progress and efforts by remaining drug-free for three months during the relevant time period, even though DCFS had not approved the drug treatment program she attended).

In this case, we examine respondent's progress during the nine months following the adjudication of wardship: from December 7, 1999, to September 7, 2000. See *In re D.F.*, 208 Ill. 2d 223, 243 (2003).

1. Detra W.'s progress

■ During the nine months following adjudication of wardship, the relevant service plan required Detra W. to complete a drug and alcohol assessment, a psychological evaluation, parenting classes, and counseling. At that time, Detra W. was incarcerated and being held in segregation as punishment for her escape from electronic detention. While in segregation, the only services available to Detra W. were psychological evaluation and counseling; the counseling was dependent on the evaluation. Steczo testified the agency had no record of Detra W. completing her evaluation although Detra W. had requested a doctor to schedule one. Steczo's notes on the November 23, 1999, service plan indicated Detra W. was referred for the evaluation which would be completed at the doctor's earliest convenience.

Detra W. testified she completed a psychiatric evaluation and submitted the evaluation at the hearing. The evaluation was completed on June 20, 2000, by Dr. Andrew Guschwan. In the evaluation, Dr. Guschwan did not recommend any psychiatric treatment or follow-up. Although Detra W. did not participate in the other services while in segregation, she placed her name on the waiting lists for parenting classes and the drug assessment. Once released from segregation in August 2000, she began parenting classes and finished the course on September 14, 2000. Detra W. also remained on the waiting list for a drug assessment and began substance abuse classes when she was transferred to another correctional facility a few months later.

The record contains several letters sent by Detra W. or her attorney on her behalf requesting the agency to schedule visits with Gwynne P. During the relevant period, Detra W. was entitled to quarterly one-hour visits with Gwynne P. upon Detra's request. The record contains seven letters written by Detra W. to the agency requesting visits with Gwynne P. during those first nine months, and one letter her attorney wrote requesting a visit on May 31, 2000. According to the testimony of Jamie Steczo and Molly Ashbaugh, only one visit was scheduled while Detra W. was in segregation.

Because Detra W. took several steps toward completing the services in her service plan, including her persistent efforts to schedule visits

with Gwynne P., we find Detra W. made a minimum measurable or demonstrable movement toward reunification. The court's finding that she failed to make reasonable progress was against the manifest weight of the evidence.

2. Edward D.'s progress

■ During the relevant time period, the agency's service plan for Edward D. required him to complete parenting classes, a drug and alcohol assessment, a psychological evaluation, and substance abuse treatment. The agency did not refer Edward D. for these services because he was incarcerated at the time. All of the required services were offered at the prison facility where Edward D. was living; however, the agency could not enroll Edward D. in those services. Instead, Edward D. had to sign up for those classes. According to the agency records, Edward D. never completed any of those services during the relevant time period. Because Edward D. failed to fulfill any of the required services available to him, the trial court's finding that Edward D. failed to make reasonable progress was not against the manifest weight of the evidence.

C. Failure to make reasonable efforts

■ Section 1(D)(m) of the Adoption Act provides a court can find a parent unfit if the parent failed to make reasonable efforts to correct the conditions that were the basis for removing the child from the parent's custody. 750 ILCS 50/1(D)(m) (West 2002). Courts focus on the amount of effort that is subjectively reasonable for the particular parent whose rights are at stake. *In re J.A.*, 316 Ill. App. 3d 553, 565, 736 N.E.2d 678 (2000). We examine respondents' efforts from December 7, 1999, to September 7, 2000. See *In re D.F.*, 208 Ill. 2d at 243 ("the nine-month evaluation period in section 1(D)(m) of the Adoption Act *** applie[d] to both the reasonable-efforts ground and the reasonable-progress ground, and that the date on which to begin assessing a parent's efforts or progress is the date the trial court enters its order adjudging the minor neglected, abused, or dependent").

1. Detra W.'s efforts

■ Gwynne P. was found neglected and abused because she was born exposed to controlled substances, her mother admitted to drug use creating an injurious environment, and both parents were incarcerated.

During part of the relevant time period, Detra W. was serving time in segregation. Services were not available to her until August 2000,

but she placed her name on the waiting list while in segregation. Upon release from segregation, she began parenting classes and remained on the waiting list for substance abuse treatment.

In the nine months following adjudication of neglect and abuse, Detra W. had little opportunity to make reasonable efforts toward correcting the conditions that led to Gwynne P.'s removal due to the limiting circumstances of her incarceration. By placing her name on the waiting list for services, and participating in services when they became available, we believe Detra W.'s efforts to correct the conditions that led to Gwynne P.'s removal, namely her drug addiction, were reasonable under the circumstances. The court's finding that Detra W. failed to make reasonable efforts was against the manifest weight of the evidence.

2. Edward D.'s efforts

Edward D. was incarcerated during the nine months following the adjudication of neglect and abuse. Unlike Detra W., services were available to Edward D. throughout his incarceration, including parenting classes and substance abuse treatment. There was no evidence he attempted to participate in any of those services, although Ashbaugh testified Edward D. completed a substance abuse class prior to the adjudication of neglect.

The trial court's finding of Edward D.'s unfitness for failure to make reasonable efforts was not against the manifest weight of the evidence.

D. Repeated incarceration

Section 1(D)(s) provides a parent is unfit if:

> "[t]he child is in the temporary custody or guardianship of the Department of Children and Family Services, the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 2002).

Only one incarceration will support a finding of unfitness if the incarceration prevented the discharge of parental duties, including providing the child with a stable home and the necessary physical, emotional, and financial support. *In re E.C.*, 337 Ill. App. 3d 391, 399, 786 N.E.2d 590 (2003); see *In re D.D.*, 196 Ill. 2d 405, 421, 752 N.E.2d 1112 (2001) (it is the "overall impact" that repeated incarceration may have on the parent's ability to discharge her parental responsibilities—"circumstances which may flow from the fact of repeated

incarceration, such as the diminished capacity to provide financial, physical, and emotional support for the child"); *In re M.P.*, 324 Ill. App. 3d 686, 755 N.E.2d 1063 (2001); see also *In re M.M.J.*, 313 Ill. App. 3d 352, 355, 728 N.E.2d 1237 (2000) ("Being a parent involves more than attending a few visits and sending an occasional gift to the child. The child needs a positive, caring role model present in her life. This ground for unfitness [repeated incarceration] may be utilized regardless of [respondent's] efforts, compliance with DCFS tasks and satisfactory attainment of goals, or the amount of interest he has shown in his daughter's welfare"). There is no requirement that the repeated incarceration occur during the lifetime of the child (*In re D.D.*, 196 Ill. 2d at 419), although, in this case, Detra W.'s incarceration lasted through the first three years of Gwynne P.'s life.

Detra W. was incarcerated shortly after Gwynne P.'s birth until March 2002, four months after the State petitioned for termination of parental rights. Edward D. was incarcerated from September 1999 until December 2002. Both respondents had been incarcerated on multiple occasions before Gwynne P.'s birth. Gwynne P. was in the temporary custody and guardianship of DCFS during respondents' incarceration. According to the social worker assigned to Gwynne P.'s case, neither respondent was able to provide a stable home, financial or emotional support for the first three years of Gwynne P.'s young life. We find the trial court's determination that both respondents were unfit based on the statutory ground of repeated incarceration (750 ILCS 50/1(D)(s) (West 2002)) was not against the manifest weight of the evidence.

E. Depravity

The Adoption Act provides that a parent can be found unfit based on a finding of depravity. 750 ILCS 50/1(D)(i) (West 2002). Illinois courts have defined depravity as " 'an inherent deficiency of moral sense and rectitude.' " *In re J.A.*, 316 Ill. App. 3d 553, 561, 736 N.E.3d 678 (2000), quoting *Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696 (1952). Under the statute, there is a rebuttable presumption of depravity if the parent has been convicted of at least three felonies and one of the convictions happened within five years of the petition seeking termination of parental rights. 750 ILCS 50/1(D)(West 2002).

1. Detra W.

The State produced certified copies of Detra W.'s convictions: two felony narcotics convictions and one felony theft conviction. All the convictions occurred within five years of the petition for termination of parental rights.

Detra W. testified she had successfully completed a drug treatment program at Haymarket and remained drug-free since 1999. She also was hired as a "detox specialist" at Haymarket and was continually employed there during the seven months prior to the hearing. She was meeting the requirements of her parole—to remain a drug-free and law-abiding citizen. She completed all the required services, including parenting skills classes. The caseworkers testified that Detra W. always acted appropriately during her visits with Gwynne P. We find Detra W. produced sufficient evidence that rebutted the presumption she had an inherent moral deficiency; the manifest weight of the evidence does not establish depravity.

2. Edward D.

The State produced certified copies of Edward D.'s convictions including seven felony arrests, with the most recent occurring in 2001, creating the presumption Edward D. was depraved. Edward D. did not offer any rebuttal evidence. Edward D. failed to complete any of the services required by the service plans. Accordingly, we do not believe the trial court's finding of depravity with regard to Edward D. was against the manifest weight of the evidence.

III. Best interests finding

Respondents contend the trial court erred because terminating their parental rights was not in Gwynne P.'s best interests.

Once a parent has been found unfit, the court must determine the best interests of the child before terminating parental rights. *In re D.T.*, 338 Ill. App. 3d 133, 145, 788 N.E.2d 133 (2003), *appeal allowed*, 205 Ill. 2d 583 (2003). The State must prove the best interests of the child by a preponderance of the evidence. *In re D.T.*, 338 Ill. App. 3d at 145. Once the trial court has made a determination regarding the child's best interests, its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re D.T.*, 338 Ill. App. 3d at 146-47.

Section 1—3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1—3(4.05) (West 2002)) lists factors the court must consider when deciding whether termination of parental rights serves a child's best interests. The factors include (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural, and religious background; (4) the child's sense of attachment, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes; (6) the child's ties to his or her community; (7) the child's need for permanence, including her need for stability and continuity of relation-

ships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. 705 ILCS 405/4—3(4.05) (West 2002).

Detra W. and Edward D. contend the trial court's finding that it was in Gwynne P.'s best interest to terminate their parental rights was against the manifest weight of the evidence. Detra W. contends the court's finding was erroneous because she has rehabilitated herself and has good parenting skills, as demonstrated during her visits with Gwynne P. Edward D. contends the fact Gwynne P. calls him "daddy" and hugs him during their visits shows a strong bond between them.

At the best interests hearing, Molly Ashbaugh, Gwynne P.'s social worker, testified Gwynne P. was placed with her current foster family in February 2000. Ashbaugh said Gwynne P. had a "very loving and bonded" relationship with both foster parents and got along well with her two foster sisters. Gwynne P. calls her foster family members "mom," "papa," and "sisters." Because Gwynne P. was born exposed to cocaine and heroin, she has special needs requiring occupational, physical, and speech therapy. At the time of the hearing, those services were being provided "as needed." Ashbaugh testified the foster parents were able to meet those special needs because they completed extensive training and the foster mother had a master's degree in early childhood special education. The foster mother participated in Gwynne P.'s therapy and was able to monitor Gwynne P.'s progress and reinforce necessary skills. Ashbaugh opined termination of respondents' parental rights was in Gwynne P.'s best interests.

On cross-examination, Ashbaugh testified she supervised visits between Gwynne P. and respondents. She observed respondents interact appropriately with Gwynne P. Both parents hugged Gwynne P. when greeting her and sent her cards. Detra W. gave Gwynne P. several gifts and Edward D. made her a family scrapbook. Ashbaugh heard Gwynne P. call Edward D. "daddy" when he asked her who he was.

Detra W. testified she had not used drugs since June 1999 and had been out of prison for one year. She attended Alcoholics Anonymous and Narcotics Anonymous meetings at least twice a week. After completing her drug treatment classes, she began working at Haymarket and had worked there for seven months at the time of the hearing. Detra W. testified Gwynne P. calls her "mommy" during their visits and overheard Gwynne P. call Edward D. "daddy."

The trial court considered all the statutory factors, and although respondents' visits with Gwynne P. were "appropriate and good" and they have a bond with their daughter, the court found the preponderance of the evidence supported termination of parental

rights. Specifically, the court mentioned the fact that Gwynne P. had lived with her foster parents for almost her entire life. She had bonded with her foster family, and referred to them as "mom," "papa," and "sisters" without prompting. The foster family provided a "loving, caring, and secure" home and had completed extensive training to meet Gwynne P.'s special needs. Additionally, the foster parents wanted to adopt Gwynne P.

Considering this evidence in the context of the statutory factors, we do not believe the trial court's decision that it was in Gwynne P.'s best interests to terminate respondents' parental rights was against the manifest weight of the evidence.

IV. The permanency goal

Both respondents contend the trial court erred by entering a permanency goal of termination of parental rights five months after the adjudication of neglect. Before the initial permanency hearing, DCFS considered the goal to be "return home." Respondents contend the court should not have changed the agency's goal of "return home" to termination of parental rights until at least nine months following adjudication. Edward D. contends the State deprived him of due process by changing the permanency goal in five months rather than nine months, which is the period of time allowed under section 1(D)(m) (750 ILCS 50/1(D)(m) (West 2002)) for a parent to make reasonable efforts or progress toward reunification.

We find no such requirement in the relevant statutes, and we note the trial court never entered a "return home" permanency goal. Section 1(D) of the Act provides statutory grounds for a finding of unfitness; it does not confer rights to parents regarding permanency goals. See *In re M.M.*, 261 Ill. App. 3d 71, 72, 634 N.E.2d 36 (1994).

Although Edward D. contends the court's permanency goal deprived him of access to reunification services, nothing in the record supports his contention. He was incarcerated for two years after the permanency goal was entered and had access through the correctional facility to the services requested by the agency. In addition, the agency continued to schedule visits.

We find respondents' contentions that the trial court abused its discretion by entering the permanency goal of "termination of parental rights" five months after the adjudication of wardship is without merit.

V. Admission of opinion testimony at best interests hearing

Finally, Edward D. contends the trial court erred when it allowed the State to offer opinion testimony which was not included in the Rule 213 disclosures during the best interests hearing.

A circuit court's decision to admit evidence will not be reversed absent an abuse of discretion. *Clayton v. County of Cook*, 346 Ill. App. 3d 367 (2003).

Rule 213 specifies what information must be included in answers to written interrogatories and limits the scope of direct examination testimony to the party's answers. See 210 Ill. 2d Rs. 213(f), (g). The rule requires different levels of specificity in interrogatory answers depending on the type of witness:

> "For each lay witness, the party must identify the subjects on which the witness will testify. ***
>
> *** For each independent expert witness, the party must identify the subjects on which the witness will testify and the opinions the party expects to elicit." 210 Ill. 2d Rs. 213(f)(1), (f)(2).

For both types of witnesses, "[a]n answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." 210 Ill. 2d Rs. 213(f)(1), (f)(2).

Courts should liberally construe the rule to ensure substantial justice between the parties. 210 Ill. 2d R. 213(k). In other words, the rule shields a party from unfair surprise, but cannot be used to exclude relevant evidence based on a technicality. 210 Ill. 2d R. 213(k), Committee Comments.

In this case, Ashbaugh testified she believed the foster mother was assisting Gwynne P.'s personal development by participating in all of the skill therapies Gwynne P. received. Ashbaugh also said she believed it was in Gwynne P.'s best interests to terminate the respondents' parental rights. Edward D. objected to the testimony because those opinions were not included in the interrogatory answers. The State argued Ashbaugh was a lay witness, and her testimony fell within the substance of the State's answers to the interrogatories.

In the State's answers to discovery interrogatories, the State listed as possible subject matter:

> "Any and all issues regarding the placement of this minor, including, but not limited to, the bond between this minor and the foster parent, any and all services the foster parent has needed and completed ***."

The State listed as a possible conclusion and opinion that "[i]t is this minor's best interest to have the natural father's parental rights terminated," based on several factors, including "any and all observation regarding the interaction between this minor and the foster parent and the existence of the parent-child bond between the foster parent and this minor."

On appeal, Edward D. contends the trial court abused its discretion by admitting Ashbaugh's testimony, because the State's interrogatory answers did not sufficiently disclose her opinions with the specificity required for either a lay witness or an independent expert.

When we apply the more stringent requirements for independent expert testimony, we find the State's interrogatory answers meet the requirements of Rule 213(f) (210 Ill. 2d R. 213(f)). First, the State's written answers stated witness testimony might include the opinion that termination of parental rights was in the child's best interests. Second, the State's answers listed "any and all observation regarding the interaction between the minor and the foster parent" as a basis for any conclusion regarding termination of parental rights. We agree with the State that Ashbaugh's testimony concerning the foster mother's participation in Gwynne P.'s therapy merely expanded on the subject of her observations of the foster mother and Gwynne P.'s interactions. The State's answers gave Edward D. sufficient notice of Ashbaugh's testimony. We find the trial court did not abuse its discretion in allowing Ashbaugh's testimony.

CONCLUSION

We affirm the trial court's findings of unfitness on all statutory grounds with regard to Edward D. We uphold the trial court's finding Detra W. was unfit based on the statutory factor of repeated incarceration (750 ILCS 50/1(D)(s) (West 2002)). We affirm the trial court's judgment that termination of respondents' parental rights was in the best interests of the child.

Affirmed.

CAHILL, J., concurs.

JUSTICE GARCIA, dissenting:

This dissent concerns the appeal of Detra W. only.

I agree with the majority that the trial court erred in finding respondent Detra W. unfit as to the following grounds: (1) failure to maintain a reasonable degree of interest, care, or concern based on section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2002)); (2) failure to make reasonable progress based on section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2002)); (3) failure to make reasonable efforts based on section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2002)); and, (4) depravity based on sec-

tion 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2002)). In each instance, we agree that each of the trial court's findings was against the manifest weight of the evidence.

Having found the trial court erred in its assessment of the evidence regarding four of the five grounds of parental unfitness the trial court had before it, I cannot agree that on the very same record, the trial court did not also err as to its finding that Detra W. was unfit as to the ground of repeated incarceration based on section 1(D)(s) of the Act (750 ILCS 50/1(D)(s) (West 2002)). The very same evidence, which the majority persuasively marshals, that compelled us to find error in the trial court's four other findings of unfitness, compels the same result as to this ground as well. On the record before us, I find the trial court's ruling of unfitness of Detra W. that her repeated incarceration resulted in precluding her from discharging her parental responsibilities at the time of the unfitness hearing to be against the manifest weight of the evidence.

The crux of the issue before the trial court on this remaining ground of unfitness must be clear: it was not whether Detra W. had "repeated incarcerations" but, rather, whether Detra's repeated incarcerations "prevented [her] from discharging *** her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 2002). The focus of the trial court's finding must be on Detra W.'s ability to be a mother to Gwynne P. at the time of the unfitness hearing.

Because a "proceeding to involuntarily terminate parental rights is a drastic measure" (*In re D.D.*, 196 Ill. 2d at 417), and we have reversed the trial court on four of its five findings of parental unfitness, we must not rely on the principle of review that a trial court's finding of unfitness is entitled to great deference in assessing the adequacy of the evidence as to this remaining ground. See *In re Adoption of Syck*, 138 Ill. 2d at 271-72. Rather, we must closely examine the record to determine whether there is clear and convincing evidence to support the bases the trial court gave for its finding that Detra W. was unfit to be a mother to Gwynne P. See *In re S.J.*, 233 Ill. App. 3d 88, 115, 598 N.E.2d 456 (1992).

The trial court in its rulings addressed each of the grounds of unfitness in succession. The trial court first considered each of the four grounds on which we have found the supporting evidence to fall short of the required clear and convincing showing to support a finding of unfitness. The trial court then addressed the ground of repeated incarceration. In its discussion of the evidence as to this ground, the trial court stated, "[n]atural mother has never progressed to unsupervised day visits or unsupervised overnight visits with the

minor." The trial court's only comment on Detra W.'s parenting skills was that her skills were "limited."

What the trial court failed to consider in its observation that Detra W. had not progressed to unsupervised visits with Gwynne is the DCFS policy that visits between a minor child and the natural parent may be restricted when a petition to terminate parental rights has been filed.[1] The petition to terminate was filed in May 2000, nearly three years before the unfitness hearing. DCFS through its social service agency had restricted Detra W.'s visits with Gwynne P. to one visit per quarter while she was in custody and one hour per month after her release. In light of this DCFS policy, Detra W. would never have progressed to unsupervised visits in the face of the pending termination petition. Clearly, the trial court, in stating a basis for its finding of unfitness on the ground of repeated incarceration, was under the mistaken belief that Detra W. could have progressed to unsupervised visits had she made sufficient progress. On this faulty assumption rests the trial court's finding of parental unfitness. The trial court was wrong in finding Detra W. an unfit parent based on the lack of progress to unsupervised visits with Gwynne. See *In re Perez,* 173 Ill. App. 3d 922, 936, 528 N.E.2d 238 (1988) (finding of unfitness against the manifest weight of the evidence where trial court mistakenly believed that any evidence of unfitness must be from date of the adjudicatory hearing and thereafter).

The trial court also found that Detra W. had limited parenting skills, without elaborating on how her parenting skills were deficient. As mandated by the service plan, Detra W. successfully completed parenting classes, from which there were no further recommendations. In fact, Detra W. satisfactorily completed every class set out in her service plan, and others not required. Also, Detra W. testified that she cares for her brother's three children three times per week—cooking for them, bathing them, dressing them, basically being a mother to them. As to the parenting skills demonstrated during her visits with Gwynne P., every visitation between Detra W. and Gwynne P. was noted as "appropriate" by the supervising representative of the social service agency. This evidence is directly at odds with the perfunctory conclusion of the trial court that Detra W.'s parenting skills were "limited."

---

[1]The rationale for this policy is that the goal of terminating the parental rights ceases all other services aimed at accomplishing reunification. See *In re M.F.,* 326 Ill. App. 3d 1110, 1117, 762 N.E.2d 701 (2002) (visits reduced to once per month when permanency goal changed to termination).

As support for the majority's determination that the trial court's finding of unfitness as to this remaining ground "was not against the manifest weight of the evidence," the majority cites the testimony of the social worker assigned to the child's case that "neither respondent was able to provide a stable home, financial or emotional support for the first three years of Gwynne P.'s young life." I first note that the trial court made no mention of this testimony in its discussion of the evidence relied upon for its finding of unfitness on the ground of repeated incarceration. Also, the social worker addressed the respondents jointly when she stated that conclusion. At the time of the unfitness hearing, the respondent father was in custody; Detra W. was not. However, there is no denying that Detra W. was unable to provide for Gwynne, from her birth in June 1999 to March 2002, when Detra was paroled from the Illinois Department of Corrections.[2] But by the time of the unfitness hearing in May 2003, much had changed in Detra W.'s life.

In May 2003, Detra W. had been drug free for nearly four years; she was employed full time; she worked as a "detox specialist" helping others "get off drugs" (this job at Haymarket makes it almost certain that she would not fall into a relapse); she had her own apartment; and she was entrusted with caring for her brother's three children. The majority's reliance solely on the period of time Detra W. was in custody for its determination that the trial court's finding was not against the manifest weight of the evidence, without considering the changes Detra W. made in her life from the beginning of her incarceration in 1999 to the date of the unfitness hearing in May 2003, flies in the face of the statutory goal of the Juvenile Court Act of 1987 of " 'preserv[ing] and strengthen[ing] family ties whenever possible.' " *In re F.S.*, 322 Ill. App. 3d at 488, quoting 705 ILCS 405/1—2(1) (West 1998).

The majority's unpersuasive application of this ground to the undisputable evidence that Detra W. was in custody for the first two years and nine months of Gwynne P.'s life is not warranted by the

[2]This position, taken by the State and public guardian as well, that Detra W.'s separation from Gwynne during the child's first two years and nine months of her life is a sufficient showing to prove unfitness commingles the evidence of the minor's best interest and the mother's unfitness. Undoubtedly, separation from Detra W. following Gwynne P.'s birth was the best outcome for the child at the time. Gwynne P., a child with special needs, was provided with services that Detra W. would not have been able to provide at the time because, at least in part, she was incarcerated. Regardless of this mixing of factors, the evidence nonetheless falls short of clear and convincing that Detra W. is an unfit mother as of the day of the unfitness hearing.

statute and at odds with the cautionary note by our supreme court in the case where it first construed the ground of repeated incarceration. "Under different circumstances, a parent's repeated incarceration, whether during the lifetime of the child or not, may not prevent the parent from discharging his or her parental duties and, therefore, would not establish that parent's unfitness."[3] *In re D.D.*, 196 Ill. 2d at 422. Detra W. has presented those "different circumstances."

I submit that other than the obvious conclusion drawn by the social worker that Detra W. could not provide a home for her child while she was in custody, the evidence as to this ground amounts to no more than the evidence on the ground of depravity, which we all agree falls short of the clear and convincing standard. More to the point, the trial court made no specific mention of any "circumstances" that flowed from Detra W.'s incarceration that resulted in her diminished capacity to discharge her parental responsibilities as of the time of the unfitness hearing. While the social worker's conclusion is factually true, it is a legal fiction to ascribe that shortcoming to Detra W. as if she could have "provided a stable home" and financial support while she was in the custody of the Illinois Department of Corrections. Moreover, Detra W. did provide emotional support to her child, although unbeknownst to Gwynne given her tender age at the time, in the form of letter writing, small gifts, the sharing of photos, the cas-

[3]Without requiring a trial court to set out the manner in which a natural parent's repeated incarceration has prevented the parent "from discharging his or her parental duties" would, I fear, make this ground too easy to establish. *Cf. In re M.F.*, 326 Ill. App. 3d 1110 (2000) (two-part analysis required on ground of mental disability: first, focus on mental disability of parent; second, focus on parent's ability to discharge parental responsibilities). The sad reality is that many children in our foster system are from families with parents in custody because of criminal (almost invariably drug related) convictions. If we are to give substance to our supreme court's cautionary note that under "different circumstances" repeated incarcerations will not invariably lead to a finding of unfitness, we must make clear that the focus of this ground is on the ability of the parent to carry out parental responsibilities, and not on the indisputable fact that a parent has been incarcerated. This is especially the case where a parent is not in custody at the time of the unfitness hearing. The trial court ought to state in very clear terms the relation between the repeated incarceration and the inability to carry out parental responsibilities before a finding of unfitness should be affirmed. Otherwise, parental unfitness becomes a *fait accompli* upon a simple showing of repeated incarcerations. This is clearly not the intent of the statute as construed by our supreme court. I am concerned this is where affirming a case like this may lead us. I also note Detra W.'s case bears little resemblance to the cases on repeated incarceration cited by the majority.

sette of her reading a book for Gwynne, and the kind and gentle words she must have expressed to Gwynne during their brief visits.[4]

The social worker in presenting her conclusion made no mention of Detra W.'s unfailing visits with her child every month from March 2002 to May 2003. Gwynne was two years, nine months old at the time of Detra's release. Gwynne is now four years, seven months old. Assuming monthly visits were allowed to continue during the pendency of this appeal, Gwynne will have visited with her mother every month for nearly two years. There was no evidence presented that would support a finding that at the time of the unfitness hearing, Detra W. could not provide "financial, physical, and emotional support" for Gwynne. It is almost unnecessary to state, and certainly beyond dispute, that at the time of the hearing, Detra W. had a greater "capacity to provide financial, physical, and emotional support for the child" than at any other time in her life, certainly in the last 15 years. There should be no question that Detra W., as the person she is now, provides "a positive, caring role model" for her child. *In re M.M.J.*, 313 Ill. App. 3d at 355. She also serves as a role model for the many other addicted mothers, now in drug treatment, that have neglected a child while in the throes of their drug dependency. Detra W. should serve as a model for the efforts required to regain fitness as a parent.

If the trial court had considered the entire period of time between the neglect adjudication and the unfitness hearing, as I believe it is required to do (see, *e.g.*, *Adams v. Adams*, 103 Ill. App. 3d 126, 430 N.E.2d 744 (1982) (in evaluating fitness of parents or the exercise of parental rights, court must look to the entirety of parents' conduct

---

[4]A related point needs to be addressed; although mentioned by the majority, they properly did not highlight it: the special needs of Gwynne P. The record is clear that as of the unfitness hearing, Gwynne P. had progressed to the point where she receives therapy only at the school she attends and only on an "as needed basis." There is no evidence that Detra W. could not meet the "special needs" of Gwynne P. As the majority implicitly recognize in rejecting the trial court's finding of unfitness as to the ground of reasonable progress, Detra W. made "measurable or demonstrable movement toward the goal of reunification." *In re M.C.*, 201 Ill. App. 3d 792, 798, 559 N.E.2d 236 (1990); see also *In re J.A.*, 316 Ill. App. 3d at 565. But perhaps more importantly, it appears likely the trial court, and the majority here as well, was swayed by the argument that the foster parents met all of Gwynne's special needs during the first nearly three years of her life. This once again improperly introduces "best interest" considerations which are not to be considered in judging the parental fitness of Detra W. In any event, there is no finding by the trial court that at the time of the unfitness hearing, Detra W. could not meet the special needs of Gwynne P.

over the period in question)), which clearly demonstrates the substantial rehabilitation on the part of Detra W., the finding that Detra W. was unable to carry out her parental responsibilities at the time of the unfitness hearing could not have been made. To require Detra W. to have done more than she accomplished to minimize the impact of her incarceration would in effect have required her to have done the impossible—undo the criminal acts she committed while in the throes of a drug addiction. She overcame her drug addiction, and her criminal acts are now history, history that no longer speaks of the person she is now. Detra W., as the person she is now, is not an unfit parent because of her convictions and incarcerations.

Because I find Detra W. not unfit, I do not reach the issue of the best interest of the minor. See *In re D.T.*, 338 Ill. App. 3d 133 (parental unfitness must first be established before considering child's best interest). I would remand this cause for a permanency hearing pursuant to section 2—28(2) (705 ILCS 405/2—28(2) (West 2002)).

