No. 3--09--0547

Filed December 30, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| In re I.B., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 08--JA--218 |
| | ) | |
| v. | ) | |
| | ) | |
| M.L., | ) | Honorable |
| | ) | Chris L. Fredericksen, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the opinion of the court:

The trial court found the respondent father, M.L., unfit to care for the minor, I.B., and that it was in the best interest of the minor that the respondent's parental rights be terminated. The respondent appeals, arguing that: (1) the trial court was prohibited from finding him unfit because he was a minor, age 15 years old; (2) he was denied his right to procedural due process because the State sought to find him unfit under section 1(D)(e) of the Adoption Act (Act) (750 ILCS 50/1(D)(e) (West 2008)), and he was not allowed the opportunity to correct the conditions that led to the removal of the minor; and (3) the trial court's best interest determination was against the manifest weight of the evidence. We affirm.

FACTS

On November 4, 2008, the State filed a juvenile petition, alleging that the minor (born May 25, 2008) was: (1) abused; and (2) neglected in that his environment was injurious to his welfare. The petition alleged that the minor was abused between July 1, 2008, and October 26, 2008, because the respondent (born on July 26, 1993) and Stephanie, the minor's mother, inflicted physical injuries on the minor by other than accidental means in that: (1) the minor was at Methodist Medical Center on October 26, 2008, and was diagnosed with bruising to a number of areas of the body, multiple rib fractures, a fractured tibia, a fractured fibula, and a fractured radius in the wrist; (2) Stephanie had shaken and squeezed the minor; and (3) the respondent had bitten the minor on the cheek, shaken and squeezed the minor, and lifted the minor in the air by the minor's ankles.

The petition alleged that the minor was living in an environment injurious to his welfare because: (1) of the allegations of abuse; (2) the respondent and Stephanie attempted to leave the hospital with the minor after bruises were found on the minor but were stopped by security; (3) the respondent and Stephanie initially told hospital staff and the police that the minor's injuries were caused by the minor hitting himself in the face or sleeping on a bottle, which appeared unlikely based on the minor's age; (4) the respondent and Stephanie repeatedly lied to the police as to the cause of the minor's injuries; (5) Stephanie had been aware of the respondent's abusive actions but

had not taken action to protect the minor; (6) Stephanie had been previously indicated for inadequate supervision of her aunt's children on April 17, 2008, by the Department of Children and Family Services (DCFS); and (7) the minor, the respondent, and Stephanie lived with the minor's maternal grandmother, who had a long history with DCFS and the juvenile court. Pursuant to a court order, the minor was placed in temporary shelter care.

On November 25, 2008, the State filed a petition for termination of parental rights. The petition alleged that the respondent was unfit because he committed extreme or repeated cruelty to the minor in that: (1) he squeezed the minor by the ribs, held the minor upside down by his ankles, bit the minor on the cheek, and shook the minor; and (2) the minor had been diagnosed with bruising to a number of areas of the body, multiple rib fractures, a fractured tibia, a fractured fibula, and a fractured radius in the wrist. 750 ILCS 50/1(D)(e) (West 2008).

On January 15, 2009, the trial court held an adjudication hearing on the juvenile petition and found that the allegations had been proven by a preponderance of the evidence. The trial court concluded that the minor was abused and neglected because of the physical abuse inflicted by the respondent and Stephanie.

On January 29, 2009, the trial court held a dispositional hearing. The trial court found the respondent unfit to care for the minor and ordered that the minor be made a ward of the court. The trial court also ordered the respondent to complete service

3

plan tasks, such as a psychological examination and a domestic violence course. The trial court denied visitation because the respondent was in jail on charges of aggravated battery and aggravated domestic battery related to the minor's injuries.

On March 11, 2009, the trial court held a hearing on the petition to terminate parental rights. The State entered the minor's medical records into evidence and presented the testimony of the officers who investigated the allegations of abuse. The respondent told the officers that the minor received the chest bruises either because he had thrown the minor in the air and caught him while they were playing or because he had hugged the minor too hard. The respondent stated that the minor got the bruise on his cheek because he bit the minor on the cheek when the minor would not stop crying. The respondent admitted that he had lifted the minor by the ankles and raised him over his head when he was playing with the minor. After doing this a few times, the respondent heard a popping noise and the minor began to cry. The respondent also admitted that he shook the baby when he cried. Stephanie told the officers that the respondent squeezed the minor and caused a popping noise. The trial court found that the petition had been proven by clear and convincing evidence.

On April 9, 2009, Amber Nichols of Catholic Charities filed a best interest hearing report. The report indicated that the minor had been placed with his foster parents since November 25,

2008. The foster parents had previously adopted the minor's uncle, who was 16 years old.

The report indicated that the foster parents had provided for the minor's needs, as the minor appeared to be in good health. The report also indicated that the foster parents and the minor had bonded to one another. The foster parents expressed a commitment to adopt the minor.

The minor had no visitation with the respondent since he was placed in foster care because the respondent was in jail on the pending criminal charges arising from the abuse. The report indicated that the respondent had not had the opportunity to complete service plan tasks because he was in custody on the criminal charges. The respondent had not signed a release form so that Nichols could speak with his counselor in the detention center.

On April 23, 2009, Nichols filed an addendum to her best interest report. The addendum indicated that the respondent had been given a plea offer, which included a prison sentence.

On the same date, the trial court held a best interest hearing. Nichols testified that the minor had no apparent permanent problems and that his health appeared to be appropriate. She also testified that the respondent could not do his service plan tasks because they were not available in jail. The trial court found that it was in the best interest of the minor to terminate the respondent's parental rights.

The respondent appeals.

ANALYSIS

On appeal, the respondent first argues that the trial court was prohibited from finding him unfit because he was a minor, age 15 years old. The respondent claims, without citation to authority, that his minority imposed a legal impediment and that the trial court should have been prevented from finding him unfit until he reached the age of majority. In particular, he notes that minors cannot enter into certain contracts and that they may voluntarily sign an acknowledgment of paternity but that paternity would not be established conclusively until six months after the minor reaches majority. See 750 ILCS 45/5(b) (West 2008).

While we agree that a minor cannot enter into certain contracts and that a minor's voluntary acknowledgment of paternity does not conclusively establish paternity until the minor reaches majority, it is unclear how this is relevant to this case. The respondent, a minor, was found to be the father of the child through court-ordered paternity testing, and an acknowledgment of paternity was unnecessary.

The respondent appears to argue that he was not subject to the Act (750 ILCS 50/0.01 et seq. (West 2008)) because of his minority. The Act is not so limited. The Act recognizes that a "putative father" may be a "male who is less than 18 years of age." 750 ILCS 50/1(R) (West 2008). It also provides that a consent to adoption or a surrender of a child is not voidable because the parent is a minor. 750 ILCS 50/11(a) (West 2008).

6

The Act applied to the respondent, and the trial court was not prohibited from finding the respondent unfit because of his minority. See In re M.M., 261 Ill. App. 3d 71, 634 N.E.2d 36 (1994) (affirming the trial court's finding of unfitness and termination of parental rights where the parents were wards of the court).

The respondent next argues that he was denied his right to procedural due process because the State sought to find him unfit under section 1(D)(e) of the Act (750 ILCS 50/1(D)(e) (West 2008)), and he was not allowed the opportunity to correct the conditions that led to the removal of the minor. The respondent cites no relevant authority to support his argument, and he does not challenge the finding of unfitness.

Section 1(D) of the Act lists statutory grounds which support a finding of unfitness, not a list of parental rights. In re B.R., 282 Ill. App. 3d 665, 669 N.E.2d 347 (1996). Section 1(D)(e) provides that a parent may be found unfit for extreme or repeated cruelty to a child. 750 ILCS 50/1(D)(e) (West 2008). It does not entitle a parent to a specific period of time before a trial court may find a parent unfit on this ground. See B.R., 282 Ill. App. 3d 665, 669 N.E.2d 347 (finding that the parent was not entitled to a period of time to correct her problems where the ground of unfitness did not entitle her to any time to correct the problems); In re M.M., 261 Ill. App. 3d 71, 634 N.E.2d 36 (finding that parents were not entitled to 12 months between the adjudication of neglect and filing of the termination

7

petition to make progress toward the return of the children because they were found unfit based on their failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare).  Therefore, we find the respondent's argument is without merit.

Lastly, the respondent argues that the trial court's best interest determination was against the manifest weight of the evidence.

Once the trial court has found the parent to be unfit, all considerations must yield to the best interest of the child.  In re D.T., 212 Ill. 2d 347, 818 N.E.2d 1214 (2004).  Accordingly, at the best interest hearing, the parent's interest in maintaining a parent-child relationship yields to the child's interest in a stable, loving home life.  D.T., 212 Ill. 2d 347, 818 N.E.2d 1214.  The State must prove by a preponderance of the evidence that termination is in the child's best interest.  D.T., 212 Ill. 2d 347, 818 N.E.2d 1214.  The court's decision requires consideration of statutory factors, including: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's sense of attachment, including love, security, familiarity, and continuity of relationships with parental figures; (4) the risks related to substitute care; and (5) the preferences of persons available to care for the child.  705 ILCS 405/1--3(4.05) (West 2008).  The "trial court is not required to explicitly mention, word-for-word," the statutory factors in its decision.  In re Janira T., 368 Ill. App. 3d 883,

8

894, 859 N.E.2d 1046, 1056 (2006). On review, the trial court's determination will not be disturbed unless it is contrary to the manifest weight of the evidence. In re Austin W., 214 Ill. 2d 31, 823 N.E.2d 572 (2005).

The trial court's best interest finding was not against the manifest weight of the evidence. The evidence showed that the minor had bonded with his foster parents, who provided for his needs and expressed a desire to adopt him. Under the care of his foster parents, the minor was in good health and appeared to be developing normally. The minor had no bond with the respondent because he was in custody for the criminal charges related to the abuse for almost half of the minor's life, and the minor's physical safety and welfare would be in jeopardy with the respondent based on the prior acts of abuse. Thus, it was not against the manifest weight of the evidence for the trial court to terminate the respondent's parental rights.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCHMIDT, J., concurs.

JUSTICE McDADE, specially concurring:

I concur in the judgment of the majority but write separately to clarify that there are some circumstances where a parent is entitled to a specific period of time to correct the conditions that led to the removal of the minor.

9

While section 1(D)(e) of the Adoption Act (Act) (750 ILCS 50/1(D)(e) (West 2008)) does not entitle a parent to a specific period of time before a trial court may find the parent unfit, section 1(D)(m) (750 ILCS 50/1(D)(m) (West 2008)) of the Act does. Section 1(D)(m)(ii) provides that a parent can be deemed unfit where he or she has failed to "make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor *** or dependent minor" has been made. 750 ILCS 50/1(D)(m)(ii) (West 2008). If the State had sought a finding of unfitness on this basis, section (1)(D)(m)(ii) would have guaranteed respondent 9 months after I.B. was adjudicated abused and neglected to make reasonable progress toward the return of I.B. See 750 ILCS 50/1(D)(m)(ii) (West 2008). Thus, the question of whether a parent is entitled to a specific period of time to correct the conditions that led to the removal of the minor is dependent upon what prong the State seeks to establish the parent's unfitness.